**SO ORDERED.**

**DONE and SIGNED May 16, 2019.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 18-31573 |
| | § | |
| Kerry Norris Lewis | § | Chapter 13 |
|     Debtor | § | |
| _____ | § | |
| Kerry Norris Lewis | § | |
|     Plaintiff | § | Adversary Proceeding |
| | § | |
| vs. | § | Case No. 18AP-3016 |
| | § | |
| Money Mayday Loans and | § | |
| Tracy Cullum | § | |
|     Defendants | § | |

## Memorandum of Decision

    This case involves a predatory lender which charged an annual percentage rate

equal to 209.81% for a loan secured by a vehicle. After the commencement of Debtor's

bankruptcy case, lender unlawfully seized the vehicle to satisfy a very small debt,

$125.00. Lender refused to surrender the vehicle after it was advised of the existence

of the automatic stay. To make matters worse, both Defendants forged and backdated

instruments to make it appear that they sold the vehicle to a third party before Defendants learned about the commencement of the bankruptcy case. The evidence, however, proved that Defendants never sold the vehicle, refused to surrender it and continue to possess it. Debtor filed this proceeding seeking damages for violation of state law and the automatic stay.

## I. <u>Jurisdiction, Venue, Core Status and Authority to Enter Final Order</u>

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper pursuant to 28 U.S.C. § 1408. All claims presented to this Court are "core" pursuant to 28 U.S.C. § 157 (b)(2)(A) and (O).

This Court has an independent duty to evaluate whether it has the constitutional authority to enter a final order or judgment. The Supreme Court's ruling in *Stern v. Marshall,* 564 U.S. 462 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C.,* 735 F.3d 279, 286 (5th Cir. 2013) (" 'the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.' ") (quoting *Stern,* 564 U.S. at 499). Thus, under *Stern*, in addition to determining whether each claim is core or non-core, this Court must also determine whether the underlying issue "stems from the bankruptcy itself or it would necessarily be resolved in the claims allowance process." *BP RE,* 735 F.3d at 286. Absent both statutory and constitutional authority, this Court may not enter a final order, and instead must issue proposed findings of fact and conclusions

of law to be considered by the district court.

Here, the complaint arises out of alleged violations of the automatic stay imposed by an express Bankruptcy Code provision—i.e. § 362(a). Moreover, the relief sought by Debtor is based upon another express Bankruptcy Code provision—i.e. § 362(k), which expressly provides for recovery of damages by a debtor for a violation of the automatic stay. Because the award of damages is not based on state law, *Stern* is inapplicable. This Court has the constitutional authority to enter a final judgment in this suit pursuant to 28 U.S.C. §§ 157(a) and (b)(1). *In re Turner*, 462 B.R. 214, 220 (Bankr. S.D. Tex. 2011), aff'd, 2012 WL 12535013 (S.D. Tex. Mar. 15, 2012) (court has authority to enter final order awarding damages for violation of automatic stay).

## II.  Findings of Fact

This Court makes the following findings of fact pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.

The facts, in pertinent part, are as follows:

1.     On September 27, 2018, Kerry Norris Lewis ("**Debtor**" or "**Plaintiff**") filed a voluntary petition pursuant to Chapter 13 of the Bankruptcy Code.

2.     Approximately seven (7) months before the commencement of her bankruptcy case, Debtor purchased a 2005 Chevy Impala (the "**Vehicle**") by paying $3,300.00 in cash. A few months later, Debtor needed a small loan of $400.00 to assist with an immediate financial need. To obtain a quick $400.00, Debtor obtained a "car

title loan"[1] from Money Mayday Loans, Inc. ("**Lender**") whereby she received $400.00 in exchange for her promise to pay $591.50, due in one payment in thirty (30) days. The loan agreement disclosed an astonishing 209.81% annual percentage rate. The loan agreement included a section entitled "promissory note" for the principal amount of $574.50 ($400.00 remitted directly to Debtor plus $174.50 for fees due to public officials, loan origination fees and documentation fees), together with accrued interest. If payment was ten (10) days late, the loan agreement permitted Lender to assess a "late charge" equal to the greater of 5% of the loan or $10. The loan agreement contained a grant of a security interest in the Vehicle and required Debtor to deliver the original certificate of title for the Vehicle. In the event of a default, the loan agreement provided that Lender may, "after giving all notices required by law, exercise any and all rights as a secured party per the Uniform Commercial Code, including repossession of the collateral." [Doc. 19, 20].

3.    When the loan became due, Debtor defaulted. This default eventually led to a pre-petition surrender of the Vehicle on August 29, 2018. On that date, Debtor executed a document entitled "LA Voluntary Surrender." The following day, however, Lender agreed to return the Vehicle to Debtor after she paid nearly $800.00,

---

[1] Car title loans "are the latest, fast-growing form of high cost, high risk loans targeting cash strapped American consumers. Storefront and online lenders advance a few hundred to a few thousand dollars based on the titles to paid-for vehicles. Loans are usually for a fraction of the vehicle's value and must be repaid in a single payment at the end of the month. Loans are made without consideration of ability to repay, resulting in many loans being renewed month after month to avoid repossession. Like payday loans, title loans charge triple digit interest rates, threaten a valuable asset, and trap borrowers in a cycle of debt." *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 662 (7th Cir. 2010), *citing* Jean Ann Fox & Elizabeth Guy, "Driven into Debt: CFA Car Title Loan Store and Online Survey," p. 1 (Nov.2005), www. consumerfed.org/pdfs/Car_Title_Loan_Report _111705.pdf; see also Michael S. Barr, "Banking the Poor," 21 *Yale J. Reg.* 121, 164–66 (2004).

leaving a balance of $125.00 as of August 30, 2018.  [Ex. 18].

4.    Less than 30 days later, Debtor commenced her bankruptcy case.  Upon the filing of her bankruptcy case, Debtor listed the Vehicle as an asset on Schedule A/B.  Although she intended to list Lender as one of her creditors, Debtor mistakenly listed a different entity with a similar name.  Thus, Lender did not receive notification of her bankruptcy case until later. [Compl., ¶¶ 11–18].

5.    Following the commencement of Debtor's bankruptcy case, Lender repossessed the Vehicle by "self-help" (i.e. without judicial process) by seizing it in a parking lot of Debtor's employer on Saturday, October 20, 2018, at 4:00 p.m. [Compl., ¶¶ 14, 73].

6.    Before its self-help repossession, Lender failed to provide a written notice required by La. R.S. 6:966(A)(2) [2] regarding the right of a secured party to take possession of the collateral without further notice upon default. [Compl., ¶¶ 62, 96].

7.    Moments after the repossession, Debtor contacted Lender by phone to explain that she had filed a Chapter 13 bankruptcy case and requested Lender to return her Vehicle.  Lender refused.  The following business day, on Monday, October 22, 2018, Debtor's bankruptcy lawyer and staff members of his law firm also conferred with representatives of Lender by email and by various telephone conversations to: (a) advise them of the existence of the automatic stay, (b) provide written confirmation of the commencement of the bankruptcy case, and (c) to demand the

---

[2] La. R.S. 6:966(A)(2) provides that prior to a non-judicial repossession of a vehicle, a secured party must send a notice to a debtor which provides: "Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process."

return of the Vehicle. Lender refused to surrender the Vehicle. The audio recordings of the telephone conversations and copies of the emails were admitted into evidence. [Compl., ¶¶ 19-21; Exs. 10-13; Testimony of Debtor, Alexis Reno and Brittany Hills].

8.    On October 24, 2018, four (4) days after the repossession, Andrew G. Nolan, the sole officer and director of Lender, sent an email to Debtor's counsel in which he claimed, for the first time, the Vehicle had been sold on the day of its seizure. To support his contention, Mr. Nolan attached to his email: (a) a copy of a bill of sale from "Tracy Cullum d/b/a Money Mayday Loans" to Travis Christopher reciting a sales price of $700.00 for the Vehicle, and (b) a copy of the backside of a blank certificate of title for an unknown vehicle showing the transfer of the Vehicle to Travis Christopher. Both documents were notarized by Mr. Nolan. [3] [Compl., ¶¶ 22-26; Ex. 19].

9.    Notwithstanding the Lender's representations, the evidence proves the Vehicle was not sold. First, documents obtained from the Louisiana Department of Public Safety, Office of Motor Vehicles, prove that title to the Vehicle remains in the name of Debtor, subject to a lien in favor of Lender. [Doc. 20]. Second, the putative buyer of the Vehicle, Travis Christopher, testified at the hearing on the Motion for Default Judgment that he did not purchase the Vehicle and did not sign the bill of sale or the certificate of title. Even though the bill of sale and the certificate of title were notarized by Lender's sole officer, Mr. Nolan, they each bear the forged

---

[3] Mr. Nolan is a Notary Public in the State of Louisiana whose notary license has been suspended on three (3) separate occasions during the last five (5) years.

signature of Mr. Christopher. It is apparent that Defendants forged the signature of Mr. Christopher on both documents, added a notary signature to make them appear legitimate and submitted them to Debtor's bankruptcy counsel in an attempt to convince him the Vehicle had been sold even though it had not.

10.    The adversary complaint was filed on November 21, 2018.  [Doc. 1]. Defendants were properly served with the summons, complaint and an order setting a preliminary pretrial conference.  [Doc. 5, 6]. On January 10, 2019, Defendant Tracy Cullum and Andrew G. Nolan, the sole officer and director of Lender, both attended the preliminary pretrial conference.  [Minute Entry 1/10/2019]. Because Lender is a corporation, the Court would not permit Mr. Nolan, a non-lawyer, to represent the corporation.  The Court encouraged Defendants to retain counsel and file responsive pleadings. Defendants advised the Court they would likely retain counsel within ten (10) days following the preliminary pretrial conference.  During the pretrial conference, the Court advised Defendants that the clerk of court had entered a default against them pursuant to Bankruptcy Rule 7055 due to their failure to file a responsive pleading.  To give Defendants time to obtain counsel, the Court continued the preliminary pretrial conference for two (2) weeks.  Defendants failed to appear at the continued preliminary pretrial conference held on January 24, 2019. [Minute Entry 1/24/2019].  Defendants also failed to engage counsel or file responsive pleadings.  More than a month after the second preliminary pretrial conference, Debtor filed a Motion for Default Judgment pursuant to Bankruptcy Rule 7055.  [Doc. 10]. Defendants were properly served with a copy of the notice of hearing on the

motion. [Doc. 12]. More than a month after Defendants were served with the notice, the Court held a hearing on the Motion for Default. Defendants did not file a response to the motion, nor appear at the hearing nor did they file any responsive pleadings to the complaint.

11.     Four (4) witnesses testified at the hearing on the Motion for Default Judgment, *viz*: Debtor, Travis Christopher, Alexis Reno and Brittany Hills. Ms. Reno and Ms. Hills are employees of Debtor's counsel who testified about their communications with Lender's representatives by telephone which were tape-recorded. All of the witnesses were credible. The Court reached its determination regarding credibility by considering the totality of the circumstances, including observing the demeanor of each witness while testifying and the rationality of the testimony in terms of consistency and persuasiveness. Each witness told a coherent and facially plausible story that was not contradicted by extrinsic evidence.

### III.   Conclusions of Law and Analysis

This Court makes the following conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

### A. Standards for Default Judgment.

Debtor filed a Motion for Default Judgment which is governed by Rule 55 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by virtue of Rule 7055 of the Federal Rules of Bankruptcy Procedure.

Under Rule 55, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff. Fed.R.Civ.P. 55(a)-(b). Under Rule 55, the entry of a default judgment is not automatic. *Ganther v. Ingle,* 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister,* 562 F.2d 343, 345 (5th Cir. 1977); see also, *In re Brunson*, 486 B.R. 759, 768 (Bankr. N.D. Tex. 2013) (applying Rule 7055, the Court concluded "a default judgment is committed to the court's discretion.").

In considering whether a default judgment should be entered against a defendant, courts have developed a three-part analysis, *viz*: (1) whether the entry of default judgment is procedurally warranted, (2) whether there is a sufficient basis in the pleadings for the judgment, and (3) determination of the form of relief, if any, due to plaintiff. *See, e.g., J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015).

Under the first prong, courts consider whether the entry of a default judgment is procedurally warranted. The factors relevant to this inquiry include:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998).

Under the second prong, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the

judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, courts are to assume, that due to its default, defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Under the third prong, courts determine what form of relief, if any, the plaintiff should receive. Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame,* 6 F.3d 307, 310 (5th Cir. 1993).

In this case, the Court held a hearing to consider the Motion for Default Judgment and the request for an award of damages. At the hearing, Debtor testified along with three (3) other witnesses regarding the events alleged in the complaint. Debtor also introduced evidence to support her claims. Considering the testimony of the witnesses, the records in the bankruptcy and adversary cases, and the evidence introduced at the hearing, this Court concludes that Debtor satisfied all three prongs. Therefore, this Court elects to exercise its discretion to grant the default judgment.

### B. <u>Whether the Entry of a Default Judgment Is Appropriate</u>.

After reviewing Debtor's Motion in light of the six (6) *Lindsey* factors

established by the Fifth Circuit, the Court determines that default judgment is procedurally warranted. On that point, it is important to note that Defendant Tracy Cullum and a representative of Defendant Money Mayday Loans each attended the initial pretrial conference during which this Court strongly encouraged them to employ counsel and to file responsive pleadings. Defendants opted to ignore this Court's advice. Beyond doubt, from a procedural standpoint, the entry of a default judgment is warranted.

As to the first *Lindsey* factor, Defendants have not filed any responsive pleadings. Consequently, there are no material facts in dispute. As to the second *Lindsey* factor, the entry of a default judgment will not substantially prejudice Defendants as they were afforded notice and an opportunity to be heard but opted not to participate in this proceeding. As to the third *Lindsey* factor, the grounds for default have been clearly established. As to the fourth *Lindsey* factor, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." As to the fifth *Lindsey* factor, Defendants' failure to respond to the Complaint, even after this Court encouraged them at the pretrial conference to retain legal counsel, mitigates the harshness of a default judgment. Finally, as to the sixth *Lindsey* factor, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants.

## C. **Whether There Is a Sufficient Basis for Judgment in the Pleadings**.

In light of the entry of default, Defendants are deemed to have admitted the allegations set forth in the Complaint. Nonetheless, the Court must review the

pleadings to determine whether they present a sufficient basis for Debtor's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

Here, the complaint provided detailed factual allegations which, if true, state a claim for relief under § 362(k) of the Bankruptcy Code for recovery of actual damages, punitive damages and attorneys' fees for violation of the automatic stay. *See*, Compl. ¶¶ 1 – 105. The complaint satisfies the *Iqbal* test. As mandated by the Fifth Circuit, *Nishimatsu Constr.*, 515 F.2d at 1206, this Court assessed the substantive merits of Debtor's claims to determine whether there is a sufficient basis in the pleadings for the judgment. In doing so, this Court assumed, that due to their default, Defendants admitted all well-pleaded facts in the complaint but did not "admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

In addition, at the hearing, Debtor and three (3) other witnesses testified. Their testimony, together with the documentary evidence introduced during that

hearing, corroborate the allegations of facts set forth in the complaint. The complaint and the evidence clearly establish that there is a sufficient basis for relief for each of Debtor's claims, including violation of applicable state law and violation of the automatic stay. The Court will examine each violation below.

### 1. Violation of State Law

The complaint alleged, and the evidenced proved, that Lender violated Louisiana law in the following respects: (1) wrongful seizure of the Vehicle; (2) breach of its duty to account for, and pay, the phantom surplus proceeds from the sham sale; (3) breach of its duty to act in a commercially reasonable fashion regarding its sham disposition of the Vehicle; and (4) breach of its duty to permit Debtor to redeem the property seized.

### a. Wrongful Seizure.

The complaint alleges the Vehicle was "illegally repossessed" due to Lender's non-compliance with Louisiana law. Compl. ¶ 61. Repossessions of motor vehicles in Louisiana are governed by Louisiana's version of Article 9 of the Uniform Commercial Code – Secured Transactions, La. R.S. 10:9-101 *et seq.*, and the Additional Default Remedies Act, La R.S. 6:965, *et seq.*, which permits self-help repossessions under limited circumstances. By its terms, La. R.S. 9:666(A)(2) required Lender to send a notice to Debtor at her last known address of its right to take possession of the Vehicle without further notice upon default. The statute requires the notice to include the debtor's name, last known address, and description of the collateral and the following in at least twelve-point type: "Louisiana law permits repossession of motor vehicles

upon default without further notice or judicial process." Because Lender failed to comply with the requirements imposed by La. R.S. 9:666(A)(2), it was not entitled to exercise self-help remedies to obtain possession of the Vehicle. La. R.S. 10:9-609 prohibits a secured party from taking possession of its collateral absent certain limited circumstances, all of which are inapplicable here. La. R.S. 10:9-602(6) provides that a debtor may not waive or vary the rules which prohibit a secured party from taking possession of its collateral. The Vehicle was wrongfully seized.

**b. Breach of Duties to Account for, and Pay, the Phantom Surplus.**

Debtor is entitled to any surplus of the sales proceeds over the loan balance plus expenses of sale and repossession. In this case, Debtor owed Lender a total outstanding indebtedness of $125.00. (Compl. ¶ 29). By forging documents to make it appear that the Vehicle was sold, Lender claims to have sold it for $700.00 (Compl. ¶ 25), thereby generating a phantom surplus of $575.00. La. R.S. 10:9-615(d) required Lender to: (1) provide an accounting for its disposition of the collateral and (2) pay the surplus proceeds of collateral. La. R.S. 10:9-602(5) provides that a debtor may not waive or vary these rules. Lender did not comply with its duty to account for, or pay, the surplus from the sham sale. Stated differently, if Lender sold the Vehicle for a surplus (as it claims), it is liable to account for, and pay, the surplus. Here, it did neither.

**c. Breach of Duties Regarding Disposition of the Vehicle**

La. R.S. 10:9-610(b), 9-611, and 9-614 deal with the disposition of collateral. La. R.S. 10:9-602(7) provides that a debtor may not waive or vary these rules. Lender

breached its duties imposed by these rules.

La. R.S. 10:9-610(b) requires the disposition to be commercially reasonable. Here, the Vehicle was unlawfully seized on a Saturday at 4:00 p.m. Even if the sham sale had been real, it would have been unreasonable for a secured party to seize non-perishable collateral and immediately sell it at a private sale for a price equal to less than one-third (1/3) of the market value of the vehicle. Thus, if the Vehicle had been sold the way Lender claims it was, the disposition was not commercially reasonable within the meaning of La. R.S. 10:9-610(b).

La. R.S. 10:9-611 requires notification before disposition of the collateral. La. R.S. 10:9-614 governs the content and form of the notification required before the disposition of consumer goods. No notice of any kind was provided to Debtor before the sham disposition of the Vehicle. Lender breached its duties.

### d. Deprivation of Debtor's Right to Redeem

La. R.S. 10:9-623 grants a debtor the right to redeem collateral after its seizure. La. R.S. 10:9-602(11) provides that a debtor may not waive or vary this right. Pursuant to La. R.S. 10:9-623(c)(2), Debtor had a right of redemption which she could have exercised at any time before Lender disposed of the collateral or entered into a contract for its disposition. Here, by pretending to sell collateral without notice to Debtor mere hours after it was unlawfully seized, Lender deprived Debtor of her non-waivable right of redemption.

### 2. Willful Violation of the Automatic Stay

The commencement of a bankruptcy case, upon the filing of a voluntary

petition, creates a bankruptcy estate. 11 U.S.C. § 541(a). If a debtor commences a case by filing a petition under Chapter 13, "property of the estate" includes, among other interests, those property interests specified in § 541 of the Code. 11 U.S.C. § 1306. Those interests include "all legal or equitable interests of the debtor in property as of the commencement of the case," without regard to the fact that the debtor is not in possession of the property. 11 U.S.C. § 541(a)(1) ("Such estate is comprised of all the following property, wherever located and by whomever held."). In this case, on the bankruptcy petition date, Debtor was the owner of the Vehicle and title to it remained in her name. As such, the Vehicle unquestionably constitutes property of the estate.

In most circumstances, third parties who possess property of the estate have a statutory duty to surrender it. 11 U.S.C. § 542(a). Notwithstanding this statutory duty, the Bankruptcy Code expressly permits certain parties to transfer property of the estate if they have neither actual notice nor actual knowledge of the commencement of the bankruptcy case and the transfer was made in good faith. 11 U.S.C. § 542(b). In this case, at the time of the post-petition repossession of the Vehicle, Defendants did not have actual notice or actual knowledge of the bankruptcy case. The evidence, however, establishes that Defendants had actual knowledge and actual notice of the bankruptcy shortly after they repossessed property of the estate. Therefore, they had a statutory duty to deliver, and account for, such property or the value of such property. 11 U.S.C. § 542(a). Here, Defendants breached their statutory

duty of delivery. [4]

By refusing to turn over the Vehicle and forging documents to make it appear that they sold property of the estate, Defendants violated the automatic stay provisions of § 362(a) of the Bankruptcy Code, which operate as a "self-executing injunction" that prevents creditors from pursuing collection efforts against the debtor or the property of the debtor's estate for pre-petition debts. *Campbell v. Countrywide Home Loans, Inc.,* 545 F.3d 348, 354–55 (5th Cir. 2008). The purpose behind the automatic stay in § 362(a) is to allow a debtor a "breathing spell" and a chance for a fresh start. *Brown v. Chesnut (In re Chesnut),* 422 F.3d 298, 301 (5th Cir. 2005) (quotation omitted). Should the automatic stay be violated, Congress has provided a debtor with a private right of action for any "willful violation." *Campbell,* 545 F.3d at 355. Section 362(k) provides, in pertinent part:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k).

The Fifth Circuit has established a three-part test for establishing an actionable violation of the stay under § 362(k): (1) the creditor must have known of the existence of the stay; (2) the creditor's acts must have been intentional; and (3) the creditor's acts must have violated the stay. *Young v. Repine (In re Repine),* 536 F.3d 512, 519 (5th Cir. 2008). Debtor must prove these factors by a preponderance of the evidence. *In re Henley,* 480 B.R. 708, 799 (Bankr. S.D. Tex. 2012).

---

[4] The Complaint does not seek to compel a turnover of the Vehicle pursuant to § 542 of the Bankruptcy Code.

As to the first element, the evidence clearly establishes that each Defendant was aware of the existence of the bankruptcy case and the automatic stay on a date not later than Saturday, October 20, 2018, when they spoke with Debtor moments after the repossession of the Vehicle. In that conversation, Debtor told them about her pending bankruptcy case. In addition, two days later, on Monday, October 22, 2018, Debtor's bankruptcy counsel and two staff members from his office spoke with representatives of Lender to inform them about Debtor's pending bankruptcy case. Beyond doubt, Defendants had notice of the existence of the automatic stay and, thus, the first part of the test is satisfied.

As to the second element, each Defendant acted intentionally on or after October 22, 2018, with respect to property of the estate, including their: (1) refusal to return to Debtor property of the estate after that date; (2) forging of documents to make it appear that they sold the Vehicle immediately after they repossessed it; and (3) refusal to account for and pay the surplus derived from the putative sale of the Vehicle. As to the second element, a willful violation does not require a specific intent to violate the automatic stay. 3 COLLIER ON BANKRUPTCY ¶ 362.12 (16th 2018). In determining what constitutes a "willful violation," the Fifth Circuit has stated:

> A willful violation [of §362(k)] does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005).

As to the third element, the conduct of each Defendant on or after October 22, 2018, violated the stay, including their refusal to return property of the estate. *See* 11 U.S.C. § 362(a)(3) ("a petition ... operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate.").

Here, all three (3) parts of the test established by the Fifth Circuit in *Repine* are satisfied. Therefore, the Court finds that the actions of Defendants constituted willful violations of the automatic stay under § 362(k).

### D.    Determination of the Appropriate Form of Relief

Because the Court has determined that Defendants willfully violated the automatic stay and violated Louisiana law by wrongfully seizing the Vehicle, Debtor is entitled to damages. An award of damages for violating the state law, however, would simply duplicate the award of damages for violating the automatic stay. Therefore, this Court will award damages for violating the stay, but will not award any additional damages for violating state law.

Under § 362(k), a debtor who successfully proves all three (3) elements of a willful violation of the automatic stay may recover actual damages, including attorney's fees, and, if appropriate, punitive damages. *See* 11 U.S.C. § 362(k). Damages under § 362(k) "must be proven with reasonable certainty and may not be speculative or based on conjecture." *Clayton v. Old Kent Mortg. Co. (In re Clayton),* No. 09–03024, 2010 WL 4482810, at *2 (Bankr.S.D.Tex. Oct. 29, 2010) (quotation omitted). In addition, courts have developed a special rule requiring that a moving party mitigate damages in actions brought under § 362(k). *Tracy v. Bank of Am., N.A.*

*(In re Tracy),* No. 08–5125, 2010 WL 5462490, at *1 (Bankr.W.D.Tex. Dec. 29, 2010) (citation omitted).

Turning to the mitigation issue first, Debtor satisfied her duty to mitigate by informing Lender of the existence of the automatic stay immediately the Vehicle had been repossessed and demanding, in vain, its return. Moreover, Debtor's bankruptcy counsel and his staff also provided adequate notice to Defendants of the existence of the stay. Debtor could not have done anything more to mitigate her damages.

With respect to damages, the Court finds Debtor proved them with reasonable certainty and they were not speculative or based on conjecture, as set forth below.

### 1.     Actual Damages

Debtor seeks recovery for actual damages for: (a) loss of her Vehicle, (b) lost wages, (c) transportation costs incurred while she was without a vehicle, (d) emotional distress, and (e) attorney's fees and expenses. The Court will address each category of damages.

### a.     Loss of Property

Debtor requests damages to compensate her for the loss of her Vehicle. Because of the wrongful seizure, Debtor is entitled to the value of her Vehicle. Using the NADA "blue book" value, this Court has determined the Vehicle was worth $2,175.00 on the date of its seizure. [Ex. 9]. Debtor owed Lender $125.00. As a result, Debtor is entitled to damages for the loss of property in the amount of $2,050.00.

### b.     Lost wages

As a result of the seizure of her Vehicle, Debtor missed several hours of work

as her Vehicle was her sole source of transportation to and from work. In fact, the Court notes that Defendants seized the Vehicle from the parking lot of Debtor's employment site. Debtor's testimony corroborated her claims for lost wages, including specific dates that she missed work, hours that she missed work and her hourly rate. As a result, Debtor is entitled to damages for the lost wages in the amount of $312.00.

### c.  Transportation Costs

Debtor requests damages to compensate her for arranging alternative transportation when she was without a vehicle, including bus fares and money she paid to third persons to let her carpool with them. In her testimony, Debtor corroborated specific amounts that she had paid to arrange alternative transportation. As a result, Debtor is entitled to damages for transportation costs in the amount of $698.00.

### d.  Emotional Distress

Debtor requests emotional distress damages stemming from the days immediately following the repossession of the Vehicle. Debtor testified that: (1) she was distraught by having her rights trampled on by Defendants' actions, especially considering that the Vehicle was her single largest asset and it was wrongfully seized from her during the pendency of her bankruptcy case; (2) the wrongful seizure caused her to be unable to take her school-aged children to their after-school activities, including cheerleading and sports practice which, in turn, caused them to be disciplined (such as running laps for the child who missed sporting practices) which,

in turn, caused her to suffer emotional distress; and (3) the wrongful seizure caused her to miss work which caused her to be unable to provide for her family's financial needs which, in turn, caused her to suffer emotional distress.

The Fifth Circuit has not yet decided the standard of proof necessary for a debtor to recover damages for an emotional distress claim under § 362(k). *Repine,* 536 F.3d at 521. According to the Fifth Circuit, a debtor must provide, at a minimum, "specific information" regarding the damages caused by the emotional injury. *Id.* at 521–22. A debtor is entitled to damages only if he or she can show a "specific discernable injury to [his or her] emotional state, proven with evidence regarding the nature and extent of the harm." *Collier v. Hill (In re Collier),* 410 B.R. 464, 477 (Bankr.S.D.Tex.2009) (citing *Hitt v. Connell,* 301 F.3d 240, 250–51 (5th Cir. 2002). Corroborating evidence of emotional distress is not required.

Here, the testimony of Debtor was particularized and extensive enough to meet the specificity requirement. In addition, there was a reasonable relationship between the willful violation and the emotional injury. At the hearing on the Motion for Default Judgment, Debtor testified that after the repossession, she lost the sole source of transportation for her family, leaving her without a way to get to work or to transport her children to after-school activities. She testified that she experienced an emotional hardship when she witnessed her children suffer as a result of the loss of transportation, including her heart-wrenching testimony of learning that her school age son was required to run extra laps at the end of his sports practice because he was repeatedly late to practice due solely to the fact that his family's vehicle had

been repossessed. Debtor testified that she attributed her feelings to the fact that she let her family down because she was unable to obtain possession of the Vehicle after it was repossessed. She also testified about the embarrassment she felt regarding the repossession and her unsuccessful pleas for the return of the Vehicle. The Court finds that the testimony of Debtor meets the specificity requirement and evidences a reasonable relationship between her emotional injuries and Defendants' violation of the automatic stay.

In consideration of all the circumstances, the Court finds that Debtor has shown emotional distress damages of $3,000.00.

### e. Attorney's Fees and Expenses

A debtor may recover reasonable attorney's fees and expenses incurred in prosecuting a § 362(k) action. *Repine,* 536 F.3d at 522. At the hearing, Debtor submitted copies of billing statements and itemized expenses from her counsel. Debtor's counsel were present during the hearing and available to answer the Court's questions about their fees and expenses.

To determine the reasonableness of the fees, Court uses the "lodestar" method, which requires the Court to multiply the prevailing hourly rate in the community by the number of hours that an attorney would reasonably expend pursuing his or her client's claim. *Walker & Patterson, P.C. v. Cahill (In re Cahill),* 428 F.3d 536, 540 (5th Cir. 2005). After calculating the "lodestar" fee, the Court considers whether to adjust that fee upwards or downwards based upon the twelve (12) factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *overruled on*

*other grounds* by *Blanchard v. Bergeron,* 489 U.S. 87 (1989). The *Johnson* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson,* 488 F.2d at 717–19.

The Supreme Court has cautioned that the presumption that the "lodestar" method provides a reasonable fee is a "strong one." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010). Similarly, the Fifth Circuit has held that "[t]he lodestar may not be adjusted due to a *Johnson* factor that was taken into account during the initial calculation of the lodestar." *Black v. SettlePou, P. C.,* 732 F.3d 492, 502 (5th Cir. 2013)

After careful review of Debtor's contract to employ special counsel [Doc. 16], which was previously approved by this Court, and counsel's billing statements and itemized expense statements [Ex. 17], the Court awards Debtor: (i) $5,235.00 for recovery of attorney's fees and expenses incurred prior to the hearing plus (ii) $600.00 in attorney's fees incurred during the hearing.

### 2. Punitive Damages

"The Fifth Circuit has held that an 'egregious conduct' standard applies in considering an award of punitive damages." *In re Adams*, 516 B.R. at 374 (quoting *Repine*, 536 F.3d at 521). Here, this Court finds that Defendants' conduct was egregious, as they violated the automatic stay, despite repeated demands to

relinquish possession of estate property. The evidence proves that Debtor, her bankruptcy counsel and his staff notified Defendants that their conduct violated the automatic stay and they did not have a right to possess the property. The Court will award punitive damages in the amount of $10,000.00.

Courts have assessed various amounts in punitive damages for violations similar to those presented here. *See e.g., In re Lile*, 103 B.R. 830, 841 (Bankr. S.D. Tex. 1989), aff'd, 161 B.R. 788 (S.D. Tex. 1993), aff'd in part sub nom. *Matter of Lile*, 43 F.3d 668 (5th Cir. 1994) (awarding actual damages of $450.00 and punitive damages of $100,000.00 when stay was violated by action of IRS in attempt to seize leasehold premises and other personal property of debtor); *Repine*, 536 F.3d at 512 (actual damages of $27,280.00 and punitive damages $5,000.00 awarded and affirmed where bankruptcy court found automatic stay was violated when attorney who had represented debtor's ex-wife in a child support enforcement action against him, willfully violated the automatic stay by continuing with her efforts to collect her fees post-petition); *In re Lara*, 569 B.R. 231 (Bankr. N.D. Tex. 2017) (stay was violated when creditor tried to collect $63.00 owed on account with repeated calls and emails leading to an award of actual damages of $500.00 and, while an award of punitive damages for creditor's first, rectified stay violation was not warranted, punitive damages totaling $24,000.00 would be awarded for subsequent violations of the automatic stay); *In re Adams*, 516 B.R. 361, 378 (Bankr. S.D. Miss. 2014) (actual damages of $18,834.67 and punitive damages $6,600.00 when stay was violated when creditor repossessed vehicle despite being informed of the filing of bankruptcy); *In re*

*Law*, 497 B.R. 843 (Bankr. N.D. Tex. 2013) (actual damages of $1,000.00 and punitive damages $10,000.00 when court found stay was violated when post-petition, pre-discharge letter mailed by motor vehicle lender to Chapter 7 debtor). Based on these cases, the Court concludes that $10,000.00 is a just and reasonable award.

### 3.     Solidary Obligors

Louisiana Civil Code Article 2324(A) provides that: "He who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." In order for a conspiracy to exist there must be agreement to commit the illegal act, the commission of the act, and agreement as to the result of the act. As one Louisiana court noted:

> Louisiana Civil Code Article 2324(A) requires a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Evidence of such a conspiracy can be actual knowledge of both parties **or overt actions with another**, or **can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.**

*Curole v. Delcambre*, 16-550 (La.App. 3 Cir. 8/2/17), 224 So.3d 1074, 1082, *writs denied*, 17-1506, 14-1491 (La. 1/9/18), 231 So.3d 652, 653 (emphasis added).

In this case, the evidence established that the repossession of the Vehicle, its subsequent phantom disposition and the violations of the automatic stay were all intentional acts undertaken in concert by both Defendants. In fact, in the phony bill of sale which purported to sell the Vehicle, Defendant Tracy Cullum signed as "seller" and identified herself in that instrument as "Tracy Cullum d/b/a Money Mayday Loans." [Ex. 19]. Thus, it is apparent that Defendant Tracy Cullum purported to own the Vehicle that was seized by Lender and used Lender's name as a mere tradename

for herself. Accordingly, both Defendants are solidarily liable for all amounts awarded by this Court. *Marks v. Motor City*, 2018-548 (La. App. 3 Cir. 2/20/19) (finding solidary liability for wrongful seizure of an automobile).

### 4.    Nature of Award Against Tracy Cullum

Within the meaning of § 523(a)(2)(A) of the Bankruptcy Code, the entire award of $21,895.00 results from money obtained through Tracy Cullum's false pretenses, false representations or actual fraud. *See Cohen v. de la Cruz*, 523 U.S. 213 (1998). This Court makes a finding of fact that Tracy Cullum acted under false pretenses, made false representations and engaged in actual fraud in connection with her: (1) possession or control of property of the estate; (2) forgery of the bill of sale of the Vehicle and her putative disposition of property of the estate; and (3) violation of the automatic stay, which resulted in the award to Debtor by this Court.

## IV.   <u>Conclusion</u>

The Court finds that Defendants willfully violated the automatic stay by retaining the Vehicle after they were informed of Debtor's bankruptcy case and refusing to surrender it despite repeated requests. The evidence proved that Defendants intentionally forged instruments to make it appear that they had sold the Vehicle when, in truth, they possessed the Vehicle the entire time. The actions of each Defendant were egregious.

The Court awards Debtor a total of $21,895.00 against both Defendants, *in solido*, representing: (a) damages for the loss of property in the amount of $2,050.00, (b) damages for the lost wages in the amount of $312.00, (c) damages for

transportation costs in the amount of $698.00, (d) emotional distress damages of $3,000.00, (e) $5,835.00 for recovery of attorney's fees and expenses, and (f) punitive damages in the amount of $10,000.00, together with judicial interest at the maximum federal rate from the date of judicial demand and until paid in full.

In accordance with Federal Rule of Civil Procedure 58 as applied by Federal Rule of Bankruptcy Procedure 7058, the Court shall enter a final judgment by separate order.

###